UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| In re Jeannine Victoria Heaver,<br><br>　　　　Debtor<br>------------------------------------------------------<br>Joseph D. Olsen, Trustee,<br><br>　　　　Plaintiff<br><br>v.<br><br>Jeannine V. Heaver,<br>First Centennial Mortgage Corporation,<br>and<br>Branch Banking & Trust Company,<br><br>　　　　Defendants | Bankruptcy No.  09-B-73096<br>Adversary No. 10-A-96094<br>Chapter 7<br>Judge Manuel Barbosa |

## MEMORANDUM OPINION

The sole issue in this adversary proceeding is whether a mortgage from the Debtor to Branch Banking & Trust Company (as successor in interest to First Centennial Mortgage Corporation) recorded 7 days before the deed that conveyed the interest in land to the Debtor was recorded may be avoided by the Chapter 7 Bankruptcy Trustee. Because such mortgage was recorded outside the chain of title and did not provide constructive notice to a hypothetical bona fide purchaser, the Trustee may avoid the mortgage.

## JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal

Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

## FACTS AND BACKGROUND

The basic facts are undisputed. The Debtor, Jeannine V. Heaver, obtained an interest in certain real estate in Hebron, Illinois (the "Property") by means of a warranty deed from Stephen and Katherine Kapsalis dated September 30, 2008. The Debtor signed a promissory note and a mortgage in the Property in favor of First Centennial Mortgage Corp. on the same day, September 30, 2008. The mortgage was recorded with the McHenry County Recorder's Office on October 24, 2008, but the warranty deed was not recorded with the McHenry County Recorder of Deeds until October 31, 2008. Ms. Heaver filed for protection under Chapter 7 of the Bankruptcy Code with this Court on July 27, 2009. The promissory note was transferred from First Centennial to defendant Branch Banking & Trust Co. ("Branch Banking") sometime subsequent to the events in question but before the filing of Ms. Heaver's bankruptcy petition.

The Chapter 7 Trustee filed this Adversary Complaint to determine the validity of Branch Banking's mortgage, arguing that because the mortgage was recorded before the deed, it was recorded outside the chain of title and is avoidable. Branch Banking argues that, because both the deed and the mortgage were recorded before the bankruptcy petition, the Trustee cannot avoid the mortgage. Because the facts were undisputed, Branch Banking filed a motion for summary judgment.

## DISCUSSION

Section 544(a)(3) of the Bankruptcy Code, sometimes called the "strong arm clause," gives

a bankruptcy trustee the power "to avoid any transfer of property of the debtor, or obligation incurred by the debtor, that would be voidable by a bona fide purchaser of the property." Sandy Ridge Oil Co. v. Centerre Bank Nat'l Assoc. (In re Sandy Ridge Oil Co.), 807 F.2d 1332, 1334 (7th Cir. 1986). The express language of Section 544(a) directs bankruptcy courts to ignore any knowledge of the trustee or of any creditor, and therefore "actual knowledge of a transfer of property or encumbrance on property [is] irrelevant, regardless of state law." Sandy Ridge, 807 F.2d at 1336. In contrast, "the state law of constructive notice remains applicable in the context of § 544(a)(3)." Id.

Under Illinois law, a "prospective purchaser of real estate or of an interest in real estate is chargeable with knowledge of what appears in the grantor-grantee index, the legal record required to be maintained by the Recorder." Landis v. Miles Homes Inc., 273 N.E.2d 153, 155 (Ill. App. Ct. 1971). Such a purchaser "is not chargeable with notice of that which appears in other records which may be kept as a convenience, such as a tract index." Id. However, it is not enough that a mortgage be recorded in the grantor-grantee index. To constitute constructive notice, a recorded mortgage "must be in the chain of title." Landis, 273 N.E.2d at 155; see also Krueger v. Oberto, 724 N.E.2d 21, 29 (Ill. App. Ct. 1999) (An "encumbrance will be in the chain of title only when it is recorded in the grantor-grantee index of the county in which the property lies."); Hillblom v. Ivancsits, 395 N.E.2d 119 (Ill. App. Ct. 1979) (because recorded notice of purchaser's lien listed only beneficiary rather than the title-holding trustee of land trust, notice was "an instrument recorded outside the chain of title [and] did not constitute constructive notice"). Chain of title has been described as "the successive conveyances commencing with the patent from the government or some other source and including the conveyance to the one claiming title." Capper v. Poulsen, 152 N.E. 587 (Ill. 1926).

Branch Banking first argues that, in this context, chain of title is based on execution and delivery of a deed, not recording. In other words, Branch Banking argues that, because the deed was executed on September 30, 2008, the Debtor owned the land at both the time the mortgage was signed and at the time it was recorded, and therefore the mortgage was both granted and recorded within the 'actual' chain of title. Branch Banking emphasizes that under Illinois law even an unrecorded deed is effective and enforceable as between the parties, and cites to two Illinois cases that seem to use the deed execution date rather than the deed recording date as the relevant date in determining whether a mortgage was recorded outside the chain of title, Glen Ellyn Sav. & Loan Ass'n, 382 N.E.2d 1267 (Ill. App. Ct. 1978), and Leeser v. Kibort, 243 Ill. App. 258 (Ill. App. Ct. 1927). However, as discussed in more detail below, the facts in Glen Ellyn and Leeser are distinguishable, and the statements Branch Banking points to in those opinions were dicta unsupported by Illinois law, while a more recent case, Skidmore, Owings & Merrill v. Pathway Financial, 527 N.E.2d 1033 (Ill. App. Ct. 1988), is directly on point and clearly held that the date the deed is recorded is the relevant date.

While an unrecorded deed may be effective to transfer property as between the parties, it must be recorded to be enforceable against third parties. Farmers State Bank v. Neese, 665 N.E.2d 534, 538 (Ill. App. Ct. 1996). The Illinois Conveyance Act states clearly that unrecorded deeds are of no effect and are void as to third parties without notice:

> All deeds, mortgages and other instruments of writing which are authorized to be recorded, shall take effect and be in force <u>from and after the time of filing the same for record, and not before</u>, as to all creditors and subsequent purchasers, without notice; and all such deeds and title papers <u>shall be adjudged void</u> as to all such creditors and subsequent purchasers, without notice, until the same shall be filed for record.

765 Ill. Comp. Stat. 5/30 (emphasis added). The purpose of the recording provision of the Conveyance Act "generally is to protect subsequent purchasers against unrecorded prior instruments, allowing reliance on the land records." Farmers State Bank, 665 N.E.2d at 539. As has been stated by the Illinois appellate court, "[r]ecords need not be searched for deeds, mortgages or other conveyances made by a vendor before he became vested in title and his vendee is not chargeable with constructive notice of matters shown by records not in the chain of title." Glen Ellyn, 382 N.E.2d 1267, 1273 (Ill. App. Ct. 1978); see also Leeser v Kibort, 243 Ill. App. 258, 262-63 (Ill. App. Ct. 1927) (holding that "a purchaser need not prosecute a search for deeds or mortgages made by his own vendor, farther back than the time at which the title is shown by the records to have been vested in such vendor; or in other words, a purchaser is not bound by the registry of deeds or mortgages from his vendor made prior to that time"). Because a purchaser is entitled to disregard purported grants of mortgages by parties who did not own the relevant land at the relevant time, both the deed and the mortgage must be of record and show that the grantor owned the land at the time the mortgage was granted. Thus, Illinois courts have emphasized that the relevant time for establishing whether a record of a mortgage is in the chain of title is the date of "record title," not the date a deed is signed. See, e.g., Landis v. Miles Homes Inc., 273 N.E.2d 153, 155 (Ill. App. Ct. 1971)( "[R]ecord of a mortgage given prior to the time of the acquisition *of record title* by the mortgagor is not in the chain of title and is not constructive notice to third persons.")(emphasis added) (citing Leeser, 243 Ill. App. at 261; Capper v. Poulsen, 321 Ill. 480, 482, 152 N.E.2d 587 (Ill. 1926)); Cunningham v. Thornton, 28 Ill. App. 58, 66 (Ill. App Ct. 1888) ("The law, we think, is well settled that such conveyances of record as are in the *apparent* chain of title are alone required to be noticed by

subsequent purchasers and incumbrancers.")(emphasis added).

For purposes of determining whether a recorded instrument conveys constructive notice in Illinois, chain of title is based on recorded instruments and is based on the dates of recording. The Illinois Supreme Court has held that "[i]f there be delay in recording [a] deed and mortgage, and the vendee executes another mortgage of the same property to a stranger, and this is recorded before the deed to the vendee and his mortgage for the purchase money are recorded, the recording of the mortgage to such third person is not notice to the vendor, because at the time the deed to the vendee had not been recorded." Cont'l Inv. & Loan Soc'y v. Wood, 48 N.E. 221, 221-222 (Ill. 1897). More recently, in Skidmore, Owings & Merrill v. Pathway Fin., the appellate court found that a mortgage recorded during the gap between the execution and recordation of the deed transferring title to the grantor did not constitute constructive notice. 527 N.E.2d 1033, 1035 (Ill. App. Ct. 1988). A deed to the Talbots was executed on December 13, 1983, and the Talbots signed a mortgage to Pathway Financial on the same date. However, the deed and the mortgage were not recorded until December 27, 1983. In the interim, the Talbots signed a trust deed to Skidmore on December 15, 1983, which was recorded on December 23, 1983. The court found that, because "when Skidmore recorded its trust deed, the record owners of the premises in the grantor-grantee index were the Comans-not Talbot," Pathway could not have expected a mortgage recorded before the deed was recorded to be a valid mortgage. Skidmore, 527 N.E.2d at 1035. Having recorded its own mortgage immediately after the deed was recorded, "Pathway could not expect that another lien, particularly one recorded outside of the record chain of title, would somehow gain priority." Id. Instead, the court noted that "[a]nyone searching the records ... would find Pathway's mortgage to have been the first interest

recorded after the recording of the warranty deed to Talbot." Skidmore, 527 N.E.2d at 1035. Here, just like Pathway in the Skidmore case, had the Trustee looked at the grantor-grantee index as of the petition date, he would have seen no mortgage or other interest recorded after the recording of the warranty deed to Ms. Heaver.[1] Therefore, the mortgage in favor of Branch Banking was recorded outside the chain of title and did not create constructive notice to the Trustee.

Branch Banking argues that the opinions in Glen Ellyn Sav. & Loan Ass'n, 382 N.E.2d 1267 (Ill. App. Ct. 1978), and Leeser v. Kibort, 243 Ill. App. 258 (Ill. App. Ct. 1927) make references to the date the relevant deed was <u>executed</u> rather than the date the deed was recorded in their discussion of chain of title. However, in both Glen Ellyn and Leeser, the mortgages at issue were recorded before <u>either</u> the execution of the deed <u>or</u> the recordation of the deed, not during a gap period, so the mortgages would have been outside the chain of title whether the court chose to look to the execution date or the recordation date. Therefore the choice between execution date and recordation date was not relevant to either decision, and there is no indication either court considered the issue. Nor did either court give any reason or explanation for why it chose the execution date or discuss the Illinois Conveyance Act. Moreover, at least in Glen Ellyn, the court stated that the earlier execution date was the appropriate reference point because the creditor "knew the Cantrells came into title on that date." 382 N.E.2d at 1273. Therefore it appears that the use of the execution date in Glen Ellyn was based at least in part on actual knowledge of the creditor, which would be irrelevant here because of Section 544(a) of the Bankruptcy Code.

Branch Banking also cites an Indiana Supreme Court case applying Indiana law, Bank of

---

[1] It is notable that Branch Banking has made no attempt to distinguish Skidmore in its reply brief, despite the fact that Skidmore is directly on point.

New York v. Nally, which held that "[o]nce recorded, a deed gives notice of the grantee's title as of the date of the deed, not the date of recording." 820 N.E.2d 644, 650 (Ind. 2005). However, Indiana's recording and conveyance laws are not the same as those of Illinois. As noted above, the Illinois Conveyance Act expressly states that deeds and mortgage shall only "take effect and be in force from and after the time of filing the same for record, and not before" and shall "be adjudged void" except as to those with notice until recorded. 765 Ill. Comp. Stat. 5/30.² While Branch Banking argues that the statute should be interpreted to mean that once a deed is ultimately recorded it has retroactive effect back to the date of the instrument (except as to third parties who act in reliance on the record during the gap period), as noted above such interpretation has been rejected by courts in Illinois. See Skidmore, 527 N.E.2d at 1035; see also Graff v. Nieberg, 233 F.2d 860, 864 (7th Cir. 1956) (interpreting Illinois Conveyance Act to mean that, for purposes of fraudulent transfer, the date of transfer is the date the deed is recorded, not the date of the deed). The Indiana court did cite one Illinois case, Landis v. Miles Homes, Inc., for the proposition that the "record of a mortgage given prior to the time of the acquisition of record title by the mortgagor is not in the chain of title and is not constructive notice to third persons." 273 N.E.2d 153 (Ill. App. Ct. 1971). However, like Glen Ellyn and Leeser, Landis dealt with a mortgage recorded before the deed was either executed or recorded, not during a gap period, and therefore the court in Landis did not need to decide whether the appropriate reference date was execution or recordation of the deed. Additionally, the court in Landis plainly stated that the appropriate time was the time of the "acquisition of record title" and not merely the "acquisition of title." The Indiana court did not address the significance of the word

---

²Additionally, unlike in Illinois, in Indiana a purchaser is charged with knowledge of the contents of both the grantor-grantee index and the mortgagor-mortgagee index. Bank of New York v. Nally, 820 N.E.2d at 649.

"record" in the language it quoted from the Illinois case.

Finally, Branch Banking argues that, even if the mortgage did not create constructive notice because it was recorded outside the chain of title, the mortgage was sufficient to create "inquiry notice" of the bank's interest. In Illinois, one "having notice of facts which would put a prudent man on inquiry is chargeable with knowledge of other facts which he might have discovered by diligent inquiry. Whatever is notice enough to excite attention and put the party on his guard is notice of everything to which such inquiry might have led and every unusual circumstance is a ground of suspicion and demands investigation." LaSalle Bank v. Ferone, 892 N.E.2d 585, 591 (Ill. App. Ct. 2008) (quoting Miller v. Bullington, 44 N.E.2d 850 (Ill. 1942)); see also Burnex Oil Co. v. Floyd, 245 N.E.2d 539 (Ill. App. Ct. 1969)("Whatever is sufficient to put a party upon inquiry is notice of all facts which pursuance of such inquiry would have revealed and without such inquiry no one can claim to be an innocent purchaser as against the party claiming an interest in the property supported by such notice."). However, because Section 544(a) of the Bankruptcy Code specifically gives the trustee avoidance powers "without regard to any knowledge of the trustee or of any creditor," in order for "inquiry notice" to apply the Trustee would have to have had constructive knowledge of the facts that would have supposedly put him on inquiry, without regard to actual knowledge. This means that some types of facts that would create inquiry notice under state law would not create constructive notice under bankruptcy law. For example, in LaSalle Bank, the Illinois court found that the bank was put on inquiry notice that the man they intended to lend money to might not own the home intended to serve as collateral when the woman in possession of the house told the bank's appraiser that she owned the home. 892 N.E.2d at 591. However, a bankruptcy trustee would not

have been on inquiry notice in such a situation because statements to a particular creditor would have to be disregarded. In contrast, since purchasers are deemed to have constructive knowledge of the contents of duly recorded instruments within the chain of title in the grantor-grantee index, facts within such documents may be sufficient to put the Trustee on inquiry notice to the extent apparent on the face of the document. Olsen v. Bank One, Rockford, N.A. (In re Bruder), 207 B.R. 151 (N.D. Ill. 1997) (Reinhard, J.) ("The only possible way any of these three could be put on inquiry notice, therefore, is if there are matters of record which would put them on inquiry notice-that is, only those matters of which they are held to be on constructive notice can be used to determine whether they were put on inquiry notice."). Thus, in Citizens Sav. Bank v. Covey (In re Pak Builders), 284 B.R. 650 (Bankr. C.D. Ill. 2002), the bankruptcy court found that, where a recorded mortgage incorrectly listed the mortgagor as the non-existent "Pak Builders, Inc." instead of "Pak Builders, an Illinois General Partnership," the bankruptcy trustee was put on inquiry notice of the mortgage and did not have power to avoid it. The trustee had argued that the mistake in name made the document outside the chain of title, but the bankruptcy court found that because the mortgage could be found under a search of "Pak Builders" in the grantor-grantee index, and because the irregularity was apparent on the face of the document, a diligent purchaser upon examination could have determined a connection between the mortgage and other instruments within the direct chain of title. Pak Builders, 284 B.R. at 653, 657. In contrast, in In re Bruder, the district court found that where a mortgagee failed to record an initial assignment of the mortgage to an initial transferee, the recorded subsequent assignment of the mortgage from the initial transferee to the subsequent transferee was outside the chain of title and gave no constructive or inquiry notice. 207 B.R. 151.

Branch Banking argues that a diligent purchaser as of the petition date should have looked at the contents of the recorded deed, seen the date of the document, and searched at least as far back as the date of the deed in the grantor-grantee index. If such a purchaser had done so, he or she would have located Branch Banking's mortgage, and also would have seen that the mortgage was dated the same day as the deed. However, as noted above, Illinois imposes no such duty on prospective purchasers. Instead, "a purchaser is not required to examine every record that might, by some possibility, affect real estate before he can safely take the title." Thorpe v. Helmer, 113 N.E. 954 (Ill. 1916). In Illinois, a purchaser is only required to search for encumbrances from the date the seller acquired record title to the property, which is the date the deed is recorded. Skidmore, 527 N.E.2d at 1035. This rule in Illinois is not without good reason. As the Trustee notes, even as between the parties, an unrecorded but validly executed deed is only binding and irrevocable upon "delivery." Farmers State Bank v. Neese, 665 N.E.2d 534, 538 (Ill. App. Ct. 1996) (citing Chicago Land Clearance Comm'n v. Yablong, 170 N.E.2d 145, 146 (Ill. 1960)). Therefore, where the date of delivery occurs later than the date the deed is executed, the date of the instrument will not be the date the buyer actually acquired title to the property, even as between the parties. Particularly where an installment contract for deed is involved, a deed may be executed but held in escrow for a significant period of time before finally released and delivered. There may be no way to tell from the document itself when a deed was delivered. In contrast, the recordation date is an easily-ascertainable and bright-line date. It is therefore not surprising that Illinois chose recordation as the appropriate date for determining whether a document is within the recorded chain of title and sufficient to convey constructive knowledge.

Therefore, because Illinois law imposed no duty on the Trustee to investigate mortgages or other purported conveyances by the Debtor recorded prior to the recordation of the warranty deed, and because even from the face of the warranty deed the Trustee could not have known the date the deed was delivered, the Trustee was on neither constructive notice or inquiry notice of the mortgage in favor of Branch Banking.

## CONCLUSION

Because the undisputed facts demonstrate that the Trustee is entitled to avoid Branch Banking's mortgage under Section 544(a)(3) of the Bankruptcy Code, Branch Banking's motion for summary judgment will be denied. However, the Trustee did not file a cross-motion for summary judgment. Under Fed. R. Civ. P. 56(f)(1), the Court has the power to grant summary judgment for a nonmovant, but only after giving notice and a reasonable time to respond. Therefore, before granting summary judgment in favor of the Trustee, the Court hereby grants Branch Banking until June 27, 2012, to file a response explaining why the Trustee is not entitled to judgment as a matter of law. A separate order shall be entered giving effect to the determinations reached herein.

OCT 15 2012

nunc pro tunc to June 13, 2012

The Honorable Manuel Barbosa
United States Bankruptcy Judge